FILED
AUG 1 0 2009

DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

AMANDA N. LOPEZ,

    on behalf of herself and all others
    similarly situated,

    Plaintiffs,

vs.

CREDIT PLUS, INC.,

    Defendant.

Civil Action No: 5:09cv369-1D
JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

### I. PRELIMINARY STATEMENT

1.    Defendant, a consumer reporting agency ("CRA") and reseller of credit information, has been selling credit reports inaccurately marking Plaintiff - and what is believed to be hundreds if not thousands of other American consumers - as "deceased," when they are very much alive. By reporting Plaintiff as "deceased," Defendant is making it practically impossible for her to access loans or other credit, because "deceased" consumers have no credit scores. Defendant's inaccurate reports are thus harming both consumers and the businesses that purchase them but cannot use them to process credit applications or extend credit due to a lack of a credit score. If Defendant truly believed that Plaintiff was dead, it would not, and should not, be selling any reports about her to any third party - for Plaintiff would not be applying for credit from the grave, and Defendant knows that identity thieves use the credit information of truly deceased persons to commit fraud. Defendant has good reasons to know that Plaintiff is not "deceased." Nevertheless, Defendant has no reasonable procedures in place to accurately report the "deceased" status of American consumers. Unfortunately, the reality is that such procedures would encumber its ability to profit from credit reports on the "deceased" reports that are either useless to both consumers and the businesses purchasing them (if the

consumer is truly alive) or possible agents of identity theft and fraud (if the consumer is truly dead). This consumer protection class action asserts that Defendant's practice of preparing and selling reports marking consumers as "deceased," as more fully set forth below, systemically and routinely violates the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 - 1681x ("FCRA"), at sections 1681e(a), e(b) and e(e).

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

4. Plaintiff Amanda N. Lopez is a living adult individual who resides in 109 New Street, Stanley, North Carolina.

5. Defendant Credit Plus, Inc. ("Credit Plus") is a business entity that regularly conducts business in North Carolina and which has a principal place of business located at 31550 Winterplace Parkway, Salisbury, MD 21804.

## IV. FACTUAL ALLEGATIONS

### A. Defendant's Practices Concerning the Sale of Reports on the "Deceased"

6. Defendant is regulated as a "consumer reporting agency" ("CRA") under the FCRA. 15 U.S.C. §1681a(e).

7. Defendant is also a reseller of credit information obtained from other CRA's. Under the FCRA a reseller is a CRA.

8. Defendant sells thousands of "consumer reports," colloquially called "credit reports" ("reports"), per year, and also sells credit scores. 15 U.S.C. §1681a(e).

9. Under the FCRA, Defendant must assure that all reports are prepared following procedures that assure "maximum possible accuracy." 15 U.S.C. §1681e(b).

10. Under the FCRA, Defendant must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§1681e(a), 1681e(e) and 1681b.

11. Defendant places a "deceased" notation or making on reports when it is advised from any of its many data sources, including other CRAs, that a given consumer is deceased.

12. Defendant does not request or require a death certificate from any of its data sources which advises that a consumer is "deceased" before placing a "deceased" mark on that consumer's report.

13. Defendant does not request or require any proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

14. Defendant does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

15. Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

16. Even in instances where other data on the face of the consumer's Credit Plus report indicates that he/she is not deceased, Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the"deceased" mark on that consumer's report.

17. Even in instances where the purportedly deceased consumer communicates directly with Defendant, Defendant employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

18. Once a "deceased" mark is placed on a consumer's report, Defendant will not provide a credit score for that consumer.

19. Nevertheless, Defendant routinely sells to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

20. Defendant's reports with a "deceased" mark sold to third parties do not ever

calculate or provide a credit score for that consumer for the repository, such as another CRA, with the deceased marking.

21. Defendant knows that third party credit furnishers use a credit score in order to process a given credit application.

22. Defendant knows that many third party credit furnishers require a credit score in order to process a given credit application.

23. Defendant knows that consumers without credit scores are unable to secure any credit from most credit furnishers.

24. Indeed, Defendant has issued press releases on the importance of credit scores to get consumers approved for loans.

25. Defendant seeks to sell a product to its customers called "ScoreWizard" precisely for the purpose of enhancing credit scores to above six hundred and eighty (680), which Defendant knows is often a credit score cut-off for eligibility for most prime rate mortgage loans. *See* http://www.creditplus.com/v2/press/FINAL%203%20-28%20scorerefCPrelease.pdf

26. Defendant knows that consumers are turned down for credit specifically because Defendant is reporting them as "deceased" and without a credit score.

27. Defendant has been put on notice through consumer disputes and claims and through the national CRA's that consumers are turned down for credit specifically because they are reported as "deceased" and without a credit score.

28. Nevertheless, Defendant employs no procedures which assure that a consumer marked as "deceased" on one of Defendant's reports is, in fact, deceased.

29. Nor does Defendant employ any procedure to limit or stop the furnishing of reports to third parties for consumers that it has marked as "deceased."

30. Defendant charges third parties a fee for reports with a mark that a consumer is deceased, as it would charge for any other report.

31. Defendant profits from the sale of reports on the deceased.

32. Defendant knows that truly deceased consumers do not apply for credit.

33. Defendant knows that the credit information and reports of truly deceased persons can be used by criminals to commit identity theft or credit fraud.

34. Defendant knows that identity theft and credit fraud are serious and widespread problems in our society.

35. Defendant has no death certificate, executorship papers, or any other proof requirements for its data sources which report a consumer as deceased or for the buyers of its reports which access the purportedly deceased consumer's information.

36. Defendant has no procedure to block the sale of credit reports on consumers who it has marked as deceased and who it believes have died.

37. Indeed, Defendant sells reports on the deceased to third parties without question.

38. Defendant knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used in identity theft or for other fraudulent purposes.

### B. The Experience of the Representative Plaintiff

39. On or about November 16, 2007, Defendant sold a credit report about Plaintiff to Freedom National Solutions, a residential mortgage provider, marking Plaintiff as "deceased."

40. Plaintiff is not deceased.

41. Defendant provided no credit score for Plaintiff, and noted on the report sold to Freedom Financial Solutions that no credit score is available because Plaintiff is deceased.

42. As a result, Defendant is making it practically impossible for Plaintiff to obtain credit and is causing her other FCRA cognizable harm.

43. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

44. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## V. CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action on behalf of the following Class: All persons residing in the United States and its Territories about whom Defendant sold any report in connection with an application for credit marking such person as "deceased" during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case.

46. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Class numbers in the hundreds or thousands.

47. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in preparing and selling reports with a "deceased' mark on them.

48. Plaintiff s claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

49. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

50. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish

incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

51. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

52. Whether Defendant violated the FCRA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

53. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

## VI. CAUSES OF ACTION

### Count One - FCRA

54. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

55. Pursuant to section 1681n and/or 1681o of the FCRA, Defendant is liable for violating the FCRA by engaging in the following conduct with respect to Plaintiff and the Class:

(a) failing to follow reasonable procedures to assure "maximum possible accuracy" of the reports it sold, in violation of 15 U.S.C. §1681e(b);

(b) failing to follow reasonable procedures to assure that reports are sold only for legitimate "permissible purposes," in violation of 15 U.S.C. §1681e(a) and e(e).

## VII. JURY TRIAL DEMAND

56. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in her favor and in the favor of the Class for the following:

A. A determination that this action may proceed and be maintained as a class action;

B. Statutory damages of $100 to $1,000 per Class member;

C. Actual damages;

D. Punitive damages;

E. Costs and reasonable attorney's fees;

F. An order declaring that Defendant's practices in preparing and/or selling reports with a deceased mark are unlawful under the FCRA;

G. An Order directing Defendant to immediately cease and desist from its unlawful practices as set forth above;

H. Such other and further relief as may be necessary, just and proper.

Respectfully submitted,

BY: _____
LEONARD BENNETT, VSB #37523
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Blvd., Suite 201
Newport News, VA 23606
(757) 930-3660
(757) 930-3662 facsimile

FRANCIS & MAILMAN, P.C.
JAMES A. FRANCIS
MARK D. MAILMAN
JOHN SOUMILAS
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600
(215) 940-8000 facsimile

DONOVAN SEARLES, LLC
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067
(215) 732-8060 facsimile

Attorneys for Plaintiff and the Class

Dated: July 31, 2009